**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **JOHN MANUEL QUINTANILLA, JR.,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **V-09-CV-39** |
| | § | |
| **RICK THALER,** | § | |
| **Director, Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Petitioner John Manuel Quintanilla, Jr.'s Petition for Writ of Habeas Corpus, and Respondent Rick Thaler's Motion for Summary Judgment. Having carefully considered the Petition, the Summary Judgment Motion, the evidence, and the arguments and authorities submitted by counsel, the Court is of the opinion that Respondent's Motion for Summary Judgment should be GRANTED, and Quintanilla's Petition for Writ of Habeas Corpus should be DENIED.

## I.   Background[1]

Quintanilla was arrested on January 14, 2003, for an aggravated robbery. At that time, no charges had been brought and no warrant issued for capital murder.[2]

At 2:30 p.m. on January 15, 2003, Quintanilla appeared before a magistrate for the warnings and other proceedings that Article 15.17 of the Texas Code of Criminal Procedure required.[3] He

---

[1]   The facts are drawn from the Texas Court of Criminal Appeals decision affirming Quintanilla's conviction and sentence. *Quintanilla v. State*, No. 75,061, 2007 WL 1839805, at 1-2 (Tex.Crim.App., 2007).

[2]   Quintanilla was eventually convicted of capital murder for murdering Victor Billings during the course of a robbery.

[3]   When Quintanilla was arrested, Article 15.17(a) of the Code of Criminal Procedure read:
In each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall without unnecessary delay ... take the person arrested or have him taken before some magistrate.... The magistrate shall

requested an attorney.

At approximately 4:00 p.m., Investigator Abel Arriazola of the Victoria County Sheriff's Office and Investigator Mike Kovorek of the Calhoun County Sheriff's Department began interrogating Quintanilla. They videotaped the interview, later labeled State's Exhibit 1a.  Prior to questioning, Arriazola gave Quintanilla his *Miranda* warnings. Quintanilla indicated that he understood his rights and wished to continue with the interview. He made no statements regarding the capital murder, nor did he invoke his right to counsel, during this portion of the interview.

At approximately 7:55 p.m., Quintanilla and the officers took a short break, which marked the end of State's Exhibit 1a. A new videotape, which eventually would be labeled State's Exhibit 1b, was inserted in the videotape recorder. Quintanilla and Kovorek returned to the room at about 8:10 p.m. to continue the interrogation; then Kovorek left the room again. A short time after that, at about 8:35 p.m., Arriazola returned, now with Detectives Alfred Santiago and Tom Copeland of the Victoria Police Department. Arriazola told Quintanilla: "Nothing has changed from the time I've talked to you," by which he meant, according to his testimony in the pre-trial hearing, that Quintanilla's rights were still in full effect. Santiago and Copeland testified that they were aware that

---

inform in clear language the person arrested ... of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, and of his right to have an examining trial. The magistrate shall also inform the person arrested of the person's right to request the appointment of counsel if the person cannot afford counsel. The magistrate shall inform the person arrested of the procedures for requesting appointment of counsel.... The magistrate shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall, after determining whether the person is currently on bail for a separate criminal offense, admit the person arrested to bail if allowed by law.

Arriazola already informed Quintanilla of his *Miranda* rights, and so they began their interrogation, which included questions regarding the capital murder, without re-administering the warnings. About fifteen minutes into the interview, however, the detectives reminded Quintanilla of his *Miranda* rights and that Arriazola had read him his rights; Quintanilla acknowledged that he remembered and understood those rights. Santiago later acknowledged in his pre-trial testimony that he inadvertently left out the warning that an attorney would be appointed if Quintanilla could not afford to hire one. At no time during the interview did Quintanilla invoke his right to counsel. During the interrogation by Santiago and Copeland, Quintanilla made inculpatory statements regarding the capital murder.

The trial court found that Quintanilla received the Article 15.17 magistrate's warning on, and requested an attorney for, the aggravated-robbery offense.  He was not under arrest for capital murder at the time of the interview.  State's Exhibits 1a and 1b constituted one continuous interview, and therefore the *Miranda* warnings Arriazola gave at the beginning of videotape 1a applied to the entire interview.  Quintanilla freely, knowingly, and voluntarily waived his *Miranda* rights regarding the capital murder at the beginning of Exh. 1a, including the right to a court-appointed attorney.  His statements regarding the aggravated robbery were taken in violation of the Sixth Amendment, but this did not prohibit the admission of statements as to other offenses.

Portions of State's Exhibits 1a and 1b were consolidated into State's Exhibit 29, a videotape that was admitted into evidence during the guilt phase of Quintanilla's trial. State's Exhibit 29 contains only those portions of the interview that relate to the capital murder charge, including Arriazola's initial warnings to Quintanilla, the introduction of Santiago and Copeland, the reminder of Quintanilla's *Miranda* warnings, and his statements regarding the capital murder. All references to the aggravated robbery and other extraneous offenses were omitted.

The jury found Quintanilla guilty of capital murder for murdering Billings while in the course of committing or attempting to commit robbery. SH at 105-07.[4] Following testimony in the sentencing phase of the trial, the jury found a probability that Quintanilla would commit future acts of criminal violence constituting a continuing threat to society. *Id.* at 108. Accordingly, the trial court sentenced Quintanilla to death. The Texas Court of Criminal Appeals affirmed Quintanilla's conviction and sentence, *Quintanilla v. State*, 2007 WL 1839805 (Tex.Crim.App., 2007), and denied his application for postconviction relief, *Ex Parte Quintanilla*, No. 67,177-01 (Tex. Crim. App. June 4, 2008).

## II.   Discussion

### A.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the "contrary to" clause, this Court may afford habeas relief only if "'the state court

---

[4]       "SH" refers to the transcript of Quintanilla's state habeas corpus proceeding.

arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The solitary inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254 (d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

B.    The Standard for Summary Judgment in Habeas Corpus Cases

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) (The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). However, where a state prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for this Court to resolve the facts in the petitioner's favor.  *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir.), *cert. denied sub nom Foster v. Epps*, 537 U.S. 1054 (2002); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997), *cert. denied*, 525 U.S. 969 (1998). Consequently, where facts have been determined by the Texas state courts, this Court is bound by such findings unless Quintanilla shows that an exception to 28 U.S.C. § 2254 applies.


C.    Summary Judgment in the Instant Case

Quintanilla claims that his constitutional rights were violated by alleged defects in the Texas capital sentencing statute and the sentencing phase jury instructions. He also contends that the trial court erred in admitting his confession into evidence, and that he received ineffective assistance of counsel.

1.   Life Without Parole

Quintanilla argues his sentence is unconstitutional because his jury did not have the option to sentence him to life without the possibility of parole. Texas enacted a life without parole option for capital sentencing juries after Quintanilla filed his initial state petition. It is well-established that changes to existing constitutionally valid criminal laws do not render the prior version of those laws unconstitutional. *See*, *e.g.*, *Colvin v. Estelle*, 506 F.2d 747, 748 (5th Cir. 1975).

Quintanilla further argues that the subsequent change by the Texas legislature to add a life without parole option, as well as similar legislative action in other states, shows that his sentence is contrary to evolving standards of decency in violation of the Eighth Amendment. It strains logic to argue, as Quintanilla does, that his sentence is unconstitutional because the legislature has changed the law concerning some alternative sentence. Moreover, the death penalty is still a sentencing option in Texas. It is and has been constitutional, and the Supreme Court has never held that a state must offer life without parole as an option in capital murder cases. Therefore, this Court cannot grant relief on Quintanilla's claim under the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

In *Teague*, the Supreme Court held that, except in very limited circumstances, a federal habeas court cannot retroactively apply a new rule of criminal procedure. The Court explained that

> a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became

final.

*Id.* at 301 (emphasis in original).  The AEDPA effectively codified the *Teague* non-retroactivity rule "such that federal habeas courts must deny relief that is contingent upon a rule of law not clearly established at the time the conviction becomes final."  *Peterson v. Cain*, 302 F.3d 508 , 511 (5th Cir. 2002) (citing *Terry Williams v. Taylor*, 529 U.S. 362, 380-81 (2000)), *cert. denied*, 537 U.S. 1118 (2003).  Because the Supreme Court has never held that the Constitution requires a state to offer a life without parole option in a capital case, *Teague* bars this Court from granting relief on this claim.

2      Burden of Proof on Mitigation

The Texas capital sentencing statute required the jury to decide whether there was a probability that Quintanilla would be a future danger to society and, if so, whether there was sufficient mitigating evidence to warrant a sentence of life imprisonment.  *See* TEX. CODE CRIM. PROC. art. 37.071 § 2(e)(1).  In his second claim for relief, Quintanilla contends that the Texas death penalty statute denied him his Fifth, Eighth, and Fourteenth Amendment rights by failing to place the burden on the State to disprove his mitigating evidence.  Quintanilla relies heavily on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Ring v. Arizona*, 536 U.S. 584 (2002), but *Apprendi* actually rejects Quintanilla's position.

> Finally, the principal dissent ignores the distinction the Court has often recognized, *see*, *e.g.*, *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), between facts in aggravation of punishment and facts in mitigation. . . . If facts found by a jury support a guilty verdict of murder, the judge is authorized by that jury verdict to sentence the defendant to the maximum sentence provided by the murder statute. If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme.

*Apprendi*, 530 U.S. at 491 n.16.  The Supreme Court has thus drawn a critical distinction between aggravating and mitigating circumstances in sentencing proceedings.  To the extent that some aggravating circumstance is required before the court may exceed an otherwise-prescribed sentencing range, the State must prove those aggravating circumstances beyond a reasonable doubt.  Under the Texas capital sentencing statute, the statutory maximum sentence in the absence of proof of aggravating circumstances is life imprisonment.  The court could not sentence Quintanilla to death unless the State proved beyond a reasonable doubt that there was a probability that he would commit future acts of violence constituting a continuing threat to society.  Once the State proved this, Quintanilla could be sentenced to death. The sentencing scheme, however, gave Quintanilla another opportunity to show that death should not be imposed, even though the State met its burden of proof.  The mitigation special issue is, in this sense, analogous to an affirmative defense.  *Apprendi* does not prohibit placing the burden of proof on this special issue on the defendant.  The mitigation special issue does not address a factor necessary to increase the maximum sentence; rather, it addresses factors that allow the jury to impose a sentence *less than* the statutory maximum.  "[N]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof."  *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir.), *cert. denied*, 546 U.S. 848 (2005).

      3.    <u>The "12-10 Rule"</u>

The jury was instructed that a "yes" answer on the sentencing special issues must be unanimous, and that a "no" answer required at least 10 "no" votes.  *See* TEX. CODE CRIM. PROC. art. 37.071(d).  The jury was not informed that, under Texas law, the jury's failure to arrive at a unanimous "yes" or at least 10 "no" votes would result in a life sentence.  In his third claim for relief, Quintanilla argues that his rights under the Eighth and Fourteenth Amendments were violated

9

by the trial court's failure to instruct the jury on the effect of a single "no" vote on the special issues. He argues that this misled the individual jurors into thinking that they could not return a life sentence unless at least ten jurors agreed on an answer to the special issue.

Petitioner relies on *Mills v. Maryland*, 486 U.S. 367 (1988) to support his claim.  In that case, the Supreme Court held that capital sentencing schemes requiring the jury to unanimously find the existence of any mitigating factor before giving that factor any weight violated the Eighth Amendment.  Rather, the Court held, each juror must be free to give any mitigating evidence any weight that juror deems appropriate in weighing mitigating against aggravating evidence.  The Texas statute complies with that requirement.  "*Mills* is not applicable to the capital sentencing scheme in Texas.  We have concluded that '[u]nder the Texas system, all jurors can take into account any mitigating circumstance.  One juror cannot preclude the entire jury from considering a mitigating circumstance.'" *Miller v. Johnson*, 200 F.3d 274, 288-89 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000) (quoting *Jacobs v. Scott*, 31 F.3d 1319, 1329 (5th Cir. 1994), *cert. denied*, 513 U.S. 1067 (1995)).

While the trial court in this case informed the jury that it could not affirmatively find that the mitigating evidence was sufficient to warrant a life sentence unless at least 10 jurors agreed, it never instructed the jury that any particular number of jurors had to agree that any particular piece of evidence was mitigating.  In other words, even if only one juror felt that a specific piece of evidence was mitigating, that juror could give the evidence any weight he deemed appropriate.  The instruction stated only that at least 10 jurors, individually weighing mitigating evidence, had to agree that there was sufficient mitigating evidence to impose a life sentence.  This instruction does not suffer from the constitutional flaw underlying *Mills*.

4.    Petitioner's Confession

10

In his fourth and fifth claims for relief, Quintanilla argues that his confession was obtained in violation of his Fifth and Sixth Amendment rights. Quintanilla was arrested on an unrelated robbery charge. He was advised of his *Miranda* rights and was interrogated for several hours about the robbery. After a short break, the interrogation continued. A short while into the second leg of the interrogation, Investigator Abel Arriazola of the Victoria County Sheriff's Office, who was present for the first part, re-entered the room with two detectives from the Victoria Police Department, Alfred Santiago and Tom Copeland. Santiago and Copeland testified that they were aware that Arriazola had already informed Quintanilla of his *Miranda* rights, and so they began their interrogation, which included questions regarding the capital murder, without re-administering the warnings. About fifteen minutes into the interview, however, the detectives reminded Quintanilla of his *Miranda* rights and that Arriazola had read him his rights; Quintanilla acknowledged that he remembered and understood those rights. Santiago later acknowledged in his pre-trial testimony that he inadvertently left out the warning that an attorney would be appointed if Quintanilla could not afford to hire one. At no time during the interview did Quintanilla invoke his right to counsel. During the interrogation by Santiago and Copeland, Quintanilla made inculpatory statements regarding the capital murder.

      a.     <u>State Court Findings</u>

The trial court found that Quintanilla received the Article 15.17 magistrate's warning on, and requested an attorney for, the aggravated-robbery offense. He was not under arrest for capital murder at the time of the interview. State's Exhibits 1a and 1b constituted one continuous interview, and therefore the *Miranda* warnings Arriazola gave at the beginning of videotape 1a applied to the entire interview. Quintanilla freely, knowingly, and voluntarily waived his rights as to the capital murder at the beginning of videotape 1a, including the right to a court-appointed attorney.

Quintanilla's statements regarding the aggravated robbery were taken in violation of his Sixth Amendment right to counsel, but this did not prohibit the admission of statements as to other offenses.

Portions of State's Exhibits 1a and 1b were consolidated into State's Exhibit 29, a videotape that was then admitted into evidence at the guilt phase of the trial. State's Exhibit 29 contains only those portions of the interview that relate to the capital murder charge, including Arriazola's initial warnings to Quintanilla, the introduction of Santiago and Copeland, the reminder of Quintanilla's *Miranda* warnings, and his statements regarding the capital murder. All references to the aggravated robbery and other extraneous offenses were omitted.

      b.    <u>Analysis</u>

      1.    <u>Sixth Amendment</u>

The Sixth Amendment right to counsel attaches when the State commences prosecution against a defendant. *McNeil*, 501 U.S. at 175. Prosecution commences at

> "the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment," *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion)). The rule is not "mere formalism," but a recognition of the point at which "the government has committed itself to prosecute," "the adverse positions of government and defendant have solidified," and the accused "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby*, *supra*, at 689, 92 S.Ct. 1877.

*Rothgery v. Gillespie County*, 554 U.S. 191, ___, 128 S.Ct. 2578, 2583 (2008). This right is offense-specific.

> The Sixth Amendment right [to counsel] ... is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way

of formal charge, preliminary hearing, indictment, information, or arraignment.

*McNeil*, 501 U.S. at 175.   Because Quintanilla was not yet charged with capital murder at the time he made his inculpatory statement, his Sixth Amendment right to counsel was not yet in effect.   He therefore fails to demonstrate any violation of his Sixth Amendment right to counsel in connection with the capital murder charge.

2.   Fifth Amendment

Quintanilla argues that his request for counsel during the magistrate's hearing invoked his Fifth Amendment right to counsel.   Although the magistrate's hearing was connected to the aggravated robbery charge, and not the capital murder, Quintanilla notes that "[t]he Fifth Amendment right to counsel is not offense-specific, and it thus precludes interrogation regarding any offense in the absence of counsel once the right has been invoked."   *McNeil v. Wisconsin*, 501 U.S. 171, 176 -77 (1991).

The Fifth Amendment right to counsel, however, does not attach until custodial interrogation commences, and invocation of the Sixth Amendment right to counsel at the magistrate's hearing did not invoke Quintanilla's Fifth Amendment rights.

> In *McNeil*, the Supreme Court held that the invocation of the Sixth Amendment right to counsel, which attaches only "after the initiation of adversary judicial criminal proceedings," does not amount to a per se invocation of the Fifth Amendment right to have counsel present during custodial interrogations about uncharged offenses. The Court reasoned that the Sixth Amendment only applies to the specific offense with which the suspect has been charged. Once the Sixth Amendment right to counsel attaches, it prohibits law enforcement officers from initiating interviews in connection with the charged offense. *Michigan v. Jackson*, 475 U.S. 625, 630-33, 106 S.Ct. 1404, 1408-09, 89 L.Ed.2d 631 (1986). With respect to an uncharged offense, however, the Sixth Amendment right has not yet attached, for the Sixth Amendment is not triggered until formal adversarial proceedings have begun. Thus, the Sixth Amendment bar to interrogations about the charged offense cannot extend to

13

> interrogations about uncharged offenses. Law enforcement officers can interrogate a suspect about an uncharged offense without offending the Sixth Amendment.

*United States v. Carpenter*  963 F.2d 736, 739 (5th Cir. 1992).  Moreover, the Texas Court of Criminal Appeals has expressly held that the Fifth Amendment right to counsel does not attach at a magistrate's hearing.  *See Green v. State,* 934 S.W.2d 92, 97 (Tex.Crim.App.1996) (holding that the appellant's request for counsel at a preliminary hearing before a magistrate did not serve to invoke his Fifth Amendment right to counsel because the appellant was not subjected to custodial interrogation during the hearing), *cert. denied,* 520 U.S. 1200 (1997). The Fifth Circuit has held that the Texas court's conclusion is consistent with federal precedent. *See Goodwin v. Johnson*, 132 F.3d 162, 180 (5th Cir. 1997).

Case law thus makes it clear that Quintanilla's Fifth Amendment right to counsel on the capital murder charge did not attach until custodial interrogation commenced.  Because the right had not yet attached at the time of the magistrate's hearing, Quintanilla's invocation of his right to counsel at that hearing can only have been an invocation of his offense-specific Sixth Amendment right to counsel on the aggravated robbery charge.

It is undisputed that the police advised Quintanilla of his Fifth Amendment right to counsel at the outset of the custodial interrogation.  Quintanilla concedes that he waived his Fifth Amendment rights at the beginning of the interrogation, *see* Petition at 25, and does not dispute the Texas court's finding that the two segments of the interrogation constituted one continuous interrogation.  Quintanilla therefore fails to demonstrate any violation of his Fifth Amendment rights.

> c.   <u>Summary</u>

At the time of his inculpatory statement, Quintanilla had a Fifth Amendment right to counsel.

He was advised of that right and waived it.  His Sixth Amendment right to counsel did not yet attach.

Therefore, the police did not violate either Quintanilla's Fifth of Sixth Amendment right to counsel

in obtaining his inculpatory statements about the capital murder.

5.     Ineffective Assistance of Counsel

In his final claim for relief, Quintanilla charges that his trial counsel rendered ineffective

assistance by failing to investigate and present mitigating evidence at the penalty phase of trial.  To

prevail on a claim for ineffective assistance of counsel, Petitioner

> must show that . . . counsel made errors so serious that counsel was
> not functioning as the "counsel" guaranteed by the Sixth
> Amendment.  Second, the [petitioner] must show that the deficient
> performance prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In order to prevail on the first prong of the

*Strickland* test, Petitioner must demonstrate that counsel's representation fell below an objective

standard of reasonableness.  *Id.* at 687-88.  Reasonableness is measured against prevailing

professional norms, and must be viewed under the totality of the circumstances.  *Id.* at 688.  Review

of counsel's performance is deferential.  *Id.* at 689.

Quintanilla states that he was raised in a fatherless home, dropped out of school in eighth

grade, and was sentenced to 10 years in prison while still a teenager.  The state habeas court found

that counsel conducted an investigation and was aware that Quintanilla came from a broken home,

was an adolescent drug addict, was incarcerated as a youth, and had thoughts of suicide.  The court

also found that counsel discussed these matters with Quintanilla, and that it was Quintanilla's

decision not to present mitigating evidence.  SH at 102.  Quintanilla presents no evidence to rebut

these findings.

Neither the Supreme Court nor the Fifth Circuit has ever held that a lawyer provides

ineffective assistance by complying with the client's instructions to not present evidence.  In fact, the Fifth Circuit has held on several occasions that a defendant cannot instruct his counsel not to present evidence at trial and then later claim that his lawyer performed deficiently by following those instructions. "If [Petitioner] knowingly made the choices, [his lawyer] was ethically bound to follow [his] wishes." *Autry v. McKaskle*, 727 F.2d 358, 362 (5th Cir. 1984), *cert. denied*, 465 U.S. 1085 (1984);[5] *see also Nixon v. Epps*, 405 F.3d 318, 325-26 (5th Cir. 2005) (finding that counsel was not ineffective for failing to present additional mitigating evidence over client's objection: "A defendant cannot block his counsel from attempting one line of defense at trial, and then on appeal assert that counsel was ineffective for failing to introduce evidence supporting that defense."); *Roberts v. Dretke*, 356 F.3d 632, 638 (5th Cir. 2004) (noting that defendant may not obstruct attorney's efforts, then claim ineffective assistance of counsel); *Dowthitt v. Johnson*, 230 F.3d 733, 748 (5th Cir. 2000) (finding that counsel was not ineffective for failing to call family members during punishment phase where defendant stated that he did not want family members to testify).[6] Counsel did not render deficient performance by following Quintanilla's instructions.

### III.  Certificate of Appealability

Quintanilla has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings.  *See Alexander v. Johnson*, 211 F.3d 895, 898(5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny a COA *sua sponte*.  The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.")  A

---

[5]     The *Autry* court also rejected the defendant's claim that counsel was required to request a competency hearing before agreeing to comply with the client's decisions.  *Id.*

[6]     *Cf. Schriro v. Landrigan,* 550 U.S. 465, 477 (2007) (stating that, if defendant instructed counsel not to present mitigating evidence, "counsel's failure to investigate further could not have been prejudicial under *Strickland*"); *Amos v. Scott*, 61 F.3d 333, 348-49 (5th Cir. 1995) (denying ineffective assistance claim for want of prejudice where defendant "strongly opposed" presenting any witnesses during punishment phase of trial).

petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does."). "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "The nature of the penalty in a capital case is a 'proper consideration in determining whether to issue a [COA], but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate.'" *Washington v. Johnson*, 90 F.3d 945, 949 (5th Cir. 1996) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)), *cert. denied*, 520 U.S. 1122 (1997). However, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001).

This Court has carefully considered each of Quintanilla's claims. While the issues Quintanilla raises are clearly important, the Court finds that each of the claims is foreclosed by clear, binding precedent. Therefore, Quintanilla has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court concludes that Quintanilla is not entitled to a certificate of appealability.

IV.   <u>Order</u>

For the foregoing reasons, it is ORDERED as follows:

1.    Respondent Rick Thaler's Motion for Summary Judgment (Docket Entry 9) is GRANTED;

2.    Petitioner John Manuel Quintanilla, Jr.'s Petition for Writ of Habeas Corpus (Docket Entry 1) is in all respects DENIED, and Quintanilla's Petition is DISMISSED; and

3.    No Certificate of Appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this Order.

**SIGNED** this 25th day of January, 2011.

*John D. Rainey*

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE
